UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN DONIUS, et al.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>RAUL A. RAMIREZ, *in his official capacity as a Rincon Tribal Court Judge*, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.:  3:25-cv-01052-RBM-DEB<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**[Doc. 2]** |

Pending before the Court is Plaintiffs Marvin Donius and Rincon Mushroom Corporation of America, Inc.'s (collectively, "Plaintiffs") Motion for an Emergency Temporary Restraining Order and Preliminary Injunction ("TRO/PI"). (Doc. 2.) The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, Plaintiffs' TRO/PI is **DENIED**.

### I.　　BACKGROUND

**A.　　Tribal Court Proceedings**

On August 25, 2015, Plaintiffs filed a Complaint for Declaratory Relief and Injunctive Relief (the "Tribal Court Complaint") in the Rincon Tribal Court, Intertribal

Court of Southern California (the "Tribal Court") against the Rincon Band of Luiseno Indians and tribal officials (collectively, the "Tribe") challenging the Tribe's regulatory jurisdiction over Plaintiffs' property. (*See* Case No. 3:09-cv-02330-WQH-JLB,[1] Doc. 158-8 at 87–121 [Tribal Court Complaint].[2]) On May 18, 2017, the Tribal Court found that the Tribe has regulatory jurisdiction over Plaintiffs' property (the "2017 Jurisdictional Order"). (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 160-1 at 5–14 [2017 Jurisdictional Order].)

On April 22, 2019, having already established the Tribe's regulatory jurisdiction over Plaintiffs' property, the Tribal Court entered a judgment in favor of the Tribe (the "2019 Judgment"). (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 160-3 at 84–93 [2019 Judgment].) Among other things, the 2019 Judgment required Plaintiffs to submit a business plan to the Tribe "[i]n order to proceed with any development or further use of the [P]roperty" and "provide [the Tribe] access to the property" to allow the Tribe's experts to assess, among other things, whether "any contamination is present." (*Id.* at 91–92.)

Plaintiffs appealed both the 2017 Jurisdictional Order and the 2019 Judgment to the Court of Appeals for the Rincon Band of Luiseño Indians (the "Tribal Appellate Court"). (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 163-1 at 611–653 [Tribal Appellate Court Opinion].) On April 20, 2020, the Tribal Appellate Court upheld the 2017 Jurisdictional Order but reversed and remanded the 2019 Judgment on the grounds that the injunctive relief provided therein was overbroad (the "Tribal Appellate Court Opinion"). (*See e.g.*, *id.* at 650 ("We find that the scope of the injunction exceeds the amount of restraint

---

[1] The parties to this action separately identified Case No. 3:09-cv-02330-WQH-JLB as a related case. (*See* Docs. 1-1 (Civil Cover Sheet), 8 (Notice of Related Case).) Accordingly, in addition to the Parties' briefing, the Court relied on documents from the related case when summarizing the procedural history of this case. *See McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014) ("[P]leadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201.") (citations omitted).

[2] The Court cites to the CM/ECF pagination for all documents unless otherwise noted.

necessary to protect the Tribe from the potential harm presented by [Plaintiffs'] conduct.").)

On June 26, 2020, the Tribal Court entered an amended judgment modifying the injunctive relief (the "Amended Judgment"). (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 160-8 at 188–203 [Amended Judgment].) The Amended Judgment requires Plaintiffs to comply with the Tribe's laws and regulations, to provide the Tribe and its experts with access to their property, and to remove fuel, hazardous waste, and septage from their property, among other things. (*See id.* at 195–203 (listing the relief provided to the Tribe).)

**B.   District Court Proceedings**

On July 17, 2020, Plaintiffs filed a First Amended Complaint ("FAC") against the Tribe in Case No. 3:09-cv-02330-WQH-JLB in the Southern District of California. (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 132 [FAC].[3]) In this FAC, Plaintiffs alleged, in pertinent part:

> On or about 2005, … the [Tribe], … including all of the Defendants herein mentioned, … devised and conspired amongst themselves to effectuate a plan and scheme … to acquire by unlawful means Plaintiffs' property, by, among other things, creating and adopting unlawful Tribal environmental ordinances to falsely claim that the Tribe has jurisdiction over Plaintiffs' use of their property, and that Plaintiffs are purportedly violating the Tribe's environmental ordinances, for the purpose of pressuring and forcing Plaintiff to sell to the Tribe their property "on the cheap," knowing that their conduct, and the harassing conduct and false claims of the other Defendants herein, of asserting regulatory jurisdiction over the use of Plaintiffs' property would make Plaintiffs' property unmarketable and leave Plaintiffs with no choice but to sell their property to the Tribe.

(*Id.* ¶ 42.) Plaintiffs asserted fourteen causes of action against the Tribe. (*Id.* ¶¶ 87–178.) Plaintiffs also requested declaratory relief as "to whether the … Tribe has regulatory

---

[3] Plaintiffs filed their initial complaint on October 20, 2009. (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 1.) However, the case was later stayed pending Plaintiffs' exhaustion of their tribal remedies. (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 65.)

jurisdiction over the Plaintiffs' use of their property" and injunctive relief "prohibiting the [Tribe] from asserting regulatory jurisdiction over Plaintiffs' use of their property, and from interfering with such use … ." (*Id.*, Request for Relief.)

On June 15, 2021, Plaintiffs filed a motion for summary judgment arguing, in pertinent part, (1) that the Tribal Court lacked jurisdiction over Plaintiffs' use of their property and (2) that the injunctive relief in the Amended Judgment is overly broad, vague, and ambiguous. (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 166 at 26–58, 60–65.) On August 23, 2021, the Tribe filed a cross-motion for summary judgment and an opposition to Plaintiffs' motion for summary judgment. (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 170.) In their cross-motion for summary judgement, the Tribe argued, in pertinent part, (1) that the Tribal Court correctly found that it had jurisdiction over Plaintiffs' use of their property under the second exception set forth in *Montana v. United States*, 450 U.S. 544 (1981) and (2) that Plaintiffs' challenge to the scope of the injunctive relief granted in the Amended Judgment was not properly before the District Court. (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 170-1 at 19–50, 66–67.)

In his order on the cross-motions for summary judgment ("MSJ Order"), the Honorable William Q. Hayes found that the Tribe had regulatory jurisdiction over the property. (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 176 [MSJ Order] at 19.) Judge Hayes also found that Plaintiffs had not exhausted their tribal remedies with respect to the injunctive relief contained in the Amended Judgment because they had not appealed the Amended Judgment to the Tribal Appellate Court. (*Id.* at 24.) Judge Hayes therefore concluded that "Plaintiffs' failure to exhaust their tribal remedies with respect to the injunction precludes review of the injunction by this Court." (*Id.*)

The Ninth Circuit Court of Appeals affirmed Judge Hayes' MSJ Order in its entirety. *See, e.g.*, *Rincon Mushroom Corp. of Am. v. Mazzetti*, No. 23-55111, 2024 WL 3066049, at *1 (9th Cir. June 20, 2024) ("Plaintiffs' challenges to the tribal court's subject matter jurisdiction fail."); *id.* at *2 ("Plaintiffs did not challenge the operative injunction in the tribal appellate court; therefore, this issue is not properly before us.").

### C. Further Tribal Court Proceedings

#### 1. Civil Contempt Motion and Order

On September 4, 2024, after the Ninth Circuit affirmed Judge Hayes' MSJ Order, the Tribe filed a Notice and Motion Regarding Civil Contempt ("Civil Contempt Motion") before the Tribal Court, along with a memorandum in support thereof. (*See* Doc. 10-1 at 202–206 [Civil Contempt Motion]; *see also id.* at 213–244 [Memorandum in Support of Civil Contempt Motion].)

On February 3, 2025, the Tribal Court found that Plaintiffs "[had] been served with notice of [the] civil contempt proceedings, and [had] been provided the opportunity to be heard, to respond to the Tribe's motion, and to appear before this Court" but failed to do so. (Doc. 2-1, Declaration of Manuel Corrales, Jr., in Support of Motion for TRO/Preliminary Injunction ["Corrales Decl."], Ex. 2 [Civil Contempt Order], at 15.) The Tribal Court granted the Tribe's Civil Contempt Motion (*id.*) and imposed monetary sanctions on Plaintiffs for their continued non-compliance with the Amended Judgment (*id.* at 15–16). The Tribal Court also ruled:

> In the event [Plaintiffs] have not established to this Court that they are in substantial compliance with the Tribe's Cleanup Plan and the Amended Judgment on or before the sixtieth (60th) calendar day (aggregate sanctions of $350,000.00) from the entry of this Court's Order, then
>
> > A. the Tribe is permitted to come onto the Subject Property and remove all structures, equipment and supplies, including all vehicles and trailers, from the Subject Property, and dispose of such structures, equipment and supplies as the Tribe determines, in its sole discretion; and
> >
> > B. the Tribe is permitted to restrict any and all access for ingress and egress from the Subject Property, except for the sole limited purpose of removing all structures, equipment and supplies.

(*Id.* at 16.)

### 2. Writ Petition and Order

On April 6, 2025, Plaintiffs filed a Petition for Writ of Certiorari and/or Writ of Mandate and/or Prohibition or Other Appropriate Relief; Memorandum of Points and Authorities ("Writ Petition") before the Tribal Appellate Court. (Doc. 10-1 at 5–24 [Writ Petition].) In their Writ Petition, Plaintiffs requested an immediate stay of the Tribal Court's Civil Contempt Order after receiving notice that the Tribe intended to "forcibly enter" Plaintiffs' property and "forcibly remove any and all structures, vehicles, equipment, containers and materials and restrict ingress and egress to the property." (*Id.* at 13 (internal quotation omitted); *see also id.* at 22–23 ("The Tribe is poised to implement the contempt order … and forcibly enter [Plaintiffs'] property and forcibly remove all structures and items from [Plaintiffs'] property, including non-Indian U.S. citizens, and then shut down all access to the property … .").)

Plaintiffs argued that the Civil Contempt Order was based on the "illegal" and "excessive in scope" Amended Judgment and the resulting Cleanup Plan. (*Id.* at 14–15; *see also id.* at 16 ("[T]he Tribal Court Civil Contempt Order … is unlawful and excessive in scope."); *id.* at 23 ("The Tribe's purported right to forcibly enter [Plaintiffs'] property and remove all structures and items on his property is based on … illegal and overly broad injunction language contained in the Amended … Judgment … . The Tribe's Clean[u]p Plan purportedly implementing this Tribal Judgment suffers from the same fate.").)

Plaintiffs concluded, "[p]eople live on the property, including [Plaintiff] Donius, and any such forcible entry and removal of non-Indian U.S. citizens would violate their 4th Amendment rights under the U.S. Constitution. The Tribe intends to sweep clean everything on the property and chain it up." (*Id.* at 15; *see also id.* at 23 ("The Tribe has no legal right to forcibly remove non-Indian U.S. citizens and their personal belongings from [Plaintiffs'] property and dispose of their property at their discretion. To the extent the Amended … Judgment can be interpreted to grant the Tribe that right, it should be rejected as a violation of these non-Indian U.S. citizens' U.S. constitutional rights.").)

On April 17, 2025, the Tribal Appellate Court found that "the record reflects that Petitioners did not appeal from the Amended Judgment" and that "writs of certiorari, mandamus, and prohibition may not be used as a substitute for an authorized appeal." (Doc. 2-1 at 42 (citing *U.S. Alkali Export Ass'n v. United States*, 325 U.S. 196 (1945)). The Tribal Appellate Court explained, "'[a]ny party aggrieved by any final order, or judgment of the [Tribal Court] may appeal such order, or judgment to the [Tribal Appellate Court] … by filing a notice of appeal with the applicable trial court within forty-five ( 45) Days after such order, or judgment has been entered.'" (*Id.* (quoting Rincon Appellate Court Rules and Procedures§ 3.812(a)).) In sum, the Tribal Appellate Court found that Plaintiffs' Writ Petition was untimely.

### D. Plaintiffs' Complaint

On April 25, 2025, approximately eight days after the Tribal Appellate Court denied Plaintiffs' Writ Petition, Plaintiffs filed the operative Complaint for Declaratory and Injunctive Relief ("Complaint") against Defendants Raul A. Ramirez, in his official capacity as a Rincon Tribal Court Judge; Bo Mazzetti, in his official capacity as the Rincon Tribal Chairman; Joseph Linton, in his official capacity as the Rincon Vice Tribal Chairman; Laurie E. Gonzalez, in her official capacity as a Rincon Tribal Council Member; John Constantino, in his official capacity as a Rincon Tribal Council Member; Alfonso Kolb, in his official capacity as a Rincon Tribal Council Member; and the Rincon Band of Luiseno Indians, a federally recognized Indian Tribe (collectively, "Tribal Defendants") before this Court. (Doc. 1 [Compl.].)

In their Complaint, Plaintiffs assert three causes of action for: (1) "Violation of U.S. Constitution 4th Amendment Rights Against Unreasonable Search and Seizure of Persons and Personal Property[,]" (2) "Violation of Due Process under the 5th and Fourteenth Amendments to the U.S. Constitution—Enforcing a Tribal Contempt Order Based on an Invalid Tribal Court Judgment[,]" and (3) "Lack of Jurisdiction—Enforcing Tribal Contempt Order to Seize and Destroy Personal Property on Non-Indian Fee Land[.]" (*Id.* at 1.)

Plaintiffs explain that they "seek declaratory and injunctive relief against the Tribal Defendants … enjoining them from enforcing [the Civil] Contempt Order based on an invalid Tribal Court [Amended] Judgment, which the Tribal Defendants believe gives them the right to forcibly enter private, non-Indian fee land outside reservation boundaries, and physically seize and destroy personal property of the non-Indian owner of the land who is a U.S. citizen and the personal property belonging to other non-Indian U.S. citizens residing on the owner's non-Indian fee land, including removing non-Indian U.S. citizens from the property and forcibly blocking access to the property."[4]  (*Id.* ¶ 1.)

### E. Plaintiffs' TRO/PI

On April 25, 2025, Plaintiffs also filed their TRO/PI.  (Doc. 2.)  In their TRO/PI, Plaintiffs argue that they are likely to succeed on the merits of their claims.  (*Id.* at 8.)  Specifically, Plaintiffs argue that the Civil Contempt Order violates Plaintiff Donius and other third-parties' Fourth Amendment rights against unreasonable searches and seizures (*id.* at 8–11); that the Amended Judgment upon which the Civil Contempt Order is based is vague, ambiguous, and overly broad in scope (*id.* at 11–14); that the Civil Contempt Order cannot stand because it is based on an invalid judgment (*id.* at 14–15); that the Tribe's Cleanup Plan is not a court order and therefore Plaintiff cannot be held in contempt for not complying with the plan (*id.* at 15–16); and that the Tribe's Cleanup Plan is unlawfully broad in scope (*id.* at 16–18).  Plaintiffs also assert that they will be irreparably harmed if the Civil Contempt Order is enforced (*id.* at 18) and that the equities and public interest favor immediate relief (*id.* at 18–19).

In supplemental briefing ordered by the Court (*see* Doc. 5), Plaintiffs assert that the Tribe must enforce and register the Amended Judgment and the related Civil Contempt Order in federal court pursuant to 28 U.S.C. § 1963, which provides:

---

[4] Plaintiffs allege that their property is outside the reservation boundaries.  In fact, Plaintiffs' property is within the reservation boundaries.  (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 176 [MSJ Order] at 3.)

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.

(Doc. 10 at 7–8.) Plaintiffs argue that § 1963 applies to Tribal Court judgments, including the Amended Judgment and the Civil Contempt Order. (*Id.* at 8–9.) Regarding irreparable harm, Plaintiffs argue that an award of damages is not possible in this case because tribal sovereign immunity shields the tribe from paying for its unlawful acts. (*Id.* at 9–10.)

### F.     Tribal Defendants' Opposition

In their Opposition, the Tribal Defendants assert that Plaintiffs' Complaint is "essentially an appeal" of the Civil Contempt Order and the Tribal Appellate Court's order denying Plaintiffs' Writ Petition. (Doc. 11 at 18.) The Tribal Defendants argue that Plaintiffs chose not to appear for the Civil Contempt Motion hearing and therefore have waived on appeal any arguments that should have been made before the Tribal Court. (*Id.* at 17–19.)

The Tribal Defendants also assert that Plaintiffs' Complaint is an attempt to re-litigate the scope of the injunctive relief set forth in the Amended Judgment, which Plaintiff did not appeal to the Tribal Appellate Court and which Judge Hayes declined to review in ruling on the parties' cross-motions for summary. (*Id.* at 19–22.) The Tribal Defendants therefore argue that Plaintiffs are equally precluded from challenging the scope of the injunctive relief set forth in the Amended Judgment under the doctrines of *res judicata* and the "law of the case." (*Id.*)

Additionally, the Tribal Defendants argue that Plaintiffs have no likelihood of success on the merits of their claims. (*Id.* at 22.) Specifically, the Tribal Defendants argue that Plaintiffs' loss of property resulting from their contemptuous conduct does not constitute a violation of the Fourth Amendment because the Tribal Defendants are not state actors, and Plaintiffs are free to remain upon or leave the property. (*Id.* at 22–23.) The

Tribal Defendants also argue that the injunctive relief set forth in the Amended Judgment is not overbroad. (*Id.* at 24–29.) The Tribal Defendants further argue that Plaintiffs' assertion that the Tribe must register the Amended Judgment or the Civil Contempt Order in federal court is false. (*Id.* at 30.)

Finally, the Tribal Defendants argue that the "balance of hardships" does not weigh in favor of granting Plaintiffs' TRO/PI because Plaintiffs have not proffered "any effort to comply with the terms of the Amended Judgment," which threatens the Tribe's reservation. (*Id.* at 30–31.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 65 governs injunctions and restraining orders. Rule 65(a)(1) provides, "[t]he [C]ourt may issue a preliminary injunction *only on notice* to the adverse party." Fed. R. Civ. P. 65(a)(1) (emphasis added). Relatedly, Rule 65(b)(1) provides, "[t]he [C]ourt may issue a temporary restraining order without written or oral notice to the adverse party or its attorney *only if*: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1) (emphasis added).[5]

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24 (citations omitted).

---

[5] Plaintiffs' initial TRO/PI filing did not indicate whether they were seeking a TRO without notice pursuant to Rule 65(b)(1), but Defendants were later served and have had an opportunity to respond. (*See* Docs. 4–5, 11.)

## III. DISCUSSION

As set forth above, Plaintiffs must establish (1) a likelihood of success on the merits of their claims, (2) irreparable harm, (3) that the balance of equities weighs in their favor, and (4) that the requested injunction is in the public interest. *See Winter*, 555 U.S. at 20. For the reasons set forth below, the Court finds that Plaintiffs have not established a likelihood of success on the merits of their claims, and Plaintiffs' TRO/PI must be denied.

**A.  Likelihood of Success on the Merits**

"Likelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors, in the absence of serious questions going to the merits." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal quotations and citations omitted).

As set forth above, Plaintiffs assert three causes of action: (1) "Violation of U.S. Constitution 4th Amendment Rights Against Unreasonable Search and Seizure of Persons and Personal Property[,]" (2) "Violation of Due Process under the 5th and Fourteenth Amendments to the U.S. Constitution—Enforcing a Tribal Contempt Order Based on an Invalid Tribal Court Judgment[,]" and (3) "Lack of Jurisdiction—Enforcing Tribal Contempt Order to Seize and Destroy Personal Property on Non-Indian Fee Land[.]" (*Id.* at 1.)  The Court addresses the likelihood of success on each cause of action in turn.

**1.  Unreasonable Search and Seizure—First Claim for Relief**

"To succeed on their Section 1983 claims, Plaintiffs must demonstrate that the action (1) occurred 'under color of state law,' and (2) resulted in the deprivation of a constitutional or federal statutory right." *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1281 (E.D. Cal. 2016) (quoting *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir.1988)).  Here, Plaintiffs allege that the Tribal Defendants, acting under the color of state law, deprived them of their Fourth Amendment right against unreasonable search and seizure. (*See* Compl. ¶¶ 41–51.)

"The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, protects 'persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Warkentine*, 152 F. Supp. 3d at 1282 (quoting U.S. Const. amend. IV).

"Whether a search or seizure is at issue, the relevant inquiry under the Fourth Amendment is one of reasonableness[,]" which "depends upon the particular facts and circumstances." *Id.* (citations omitted).

Plaintiffs allege that the Civil Contempt Order violates Plaintiff Donius' and other third-parties' Fourth Amendment rights[6] against unreasonable searches and seizures because it "permits the Tribe to: 'come onto [Plaintiff] Donius' property and remove all structures, equipment and supplies, including all vehicles and trailers … and dispose of such structures, equipment and supplies as the Tribe determines in its sole discretion'" and "'restrict any and all access for ingress and egress … .'" (Compl. ¶¶ 41–42.) Plaintiffs then allege that the Amended Judgment "permits this action as well, and it is the basis for the contempt order, it, too, is unconstitutional and thus void." (*Id.* ¶ 47.) Plaintiffs also alleges that the Tribe is impermissibly exercising criminal jurisdiction over Plaintiffs. (*See id.* at ¶¶ 48–50.) Finally, Plaintiffs allege that "the Tribal Defendants … [are] acting under color of law by seeking to enforce the [Civil] Contempt Order under the authority of the U.S. District Court." (*Id.* ¶ 51.) Plaintiffs claim, however, "that authority is lacking … because … the Trib[al] [Defendants] never registered the Amended … Judgment with the federal court system."[7] (*Id.*) As set forth below, the Court finds that Plaintiffs have failed to establish a likelihood of success on the merits for this unreasonable search and seizure claim.

First, the Court finds that the Tribal Defendants are not acting under the color of state law. The law in the Ninth Circuit is clear that "actions under [§] 1983 cannot be maintained in federal court for persons alleging a deprivation of constitutional rights under [the] color of tribal law." *Pistor v. Garcia*, 791 F.3d 1104, 1114 (9th Cir. 2015) (internal

---

[6] "[A plaintiff] cannot maintain a federal civil action to redress injuries to others, or to assert the rights of nonparties." *Bellack v. United States*, 962 F.2d 13 (9th Cir. 1992) (citing *Tileston v. Ullman*, 318 U.S. 44 (1943)). The Court will disregard allegations and arguments concerning the rights of third parties residing on Plaintiff Donius' property.
[7] Plaintiffs repeat these allegations as argument in their TRO/PI. (*See* Doc. 2 at 8–11.)

quotation omitted). Because Plaintiffs allege that the Tribal Defendants entered and destroyed Plaintiffs' property pursuant to the *Tribal Court's* Civil Contempt Order, based on the *Tribal Court's* Amended Judgment, not state or federal law, the Tribal Defendants cannot be held liable under § 1983. Plaintiffs also have not provided any authority to support their position that the presence of San Diego County police alters this analysis. Plaintiffs' unreasonable search and seizure claim, brought under § 1983, fails on this basis alone.

Second, while Plaintiffs correctly note that the Tribe does not have criminal jurisdiction over non-Indians like Plaintiff Donius, *see Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 195 (1978), Plaintiffs have not clearly explained how the Tribal Defendants are impermissibly exercising criminal jurisdiction over Plaintiffs as opposed to its regulatory or adjudicative jurisdiction, *see e.g., Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 478 (9th Cir. 1985) (finding that the exclusion of non-Indians from a reservation falls within the Indian tribe's civil powers) (emphasis added). As alleged, Plaintiffs' Complaint focuses on the destruction of Plaintiffs' personal property pursuant to the *Civil* Contempt Order. (*See* Compl. ¶ 1 ("Tribal officials forcibly entered [Plaintiff] Donius' property on April 24, 2025, and began destroying and removing his personal property."); *id.* ¶ 39 ("The Tribal Defendants are now poised to enforce the [Civil] Contempt Order and … remove and destroy on the property, including structures and personal property belonging to others."). The Court is not persuaded that the Tribal Defendants are impermissibly exercising criminal jurisdiction over Plaintiffs.

Finally, Plaintiffs have not provided sufficient support or authority for their position that the Tribal Defendants "must first register the Amended … Judgment in federal court and then enforce it in federal court … ." (Doc. 2 at 11; *see also* Compl. ¶ 51.) While 28 U.S.C. § 1963 provides that "[a] judgment in an action for the recovery of money or property … may be registered by filing a certified copy of the judgment in any other district … when the judgment has become final by appeal or expiration of the time for appeal[,]" this provision applies only to the recovery of "money or property," not the injunctive relief

at the forefront of Plaintiffs' Complaint. While the Civil Contempt Order does provide for monetary sanctions, Plaintiffs do not appear to challenge those sanctions.

In sum, Plaintiffs have failed to establish a likelihood of success on its unreasonable search and seizure claim, and Plaintiffs' TRO/PI must be denied with respect to this claim.

### 2. Violation of Fourteenth Amendment Due Process—Second Claim for Relief

"Plaintiffs appear to assert [a procedural due process theory] for relief under to 42 U.S.C. § 1983." *Los Alamitos Med. Ctr., Inc. v. Loc. Initiative Health Auth. for Los Angeles*, 680 F. Supp. 3d 1169, 1174 (C.D. Cal. 2023). "To obtain relief on a procedural due process claim, [a] plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993)).

Plaintiffs allege that the Tribal "Defendants' actions in pursuing contempt proceedings in the Tribal … Court and then seeking to enforce [the Civil] Contempt Order that purportedly allows the Tribe to forcibly remove [Plaintiff] Donius' property from his land violates [Plaintiff] Donius' *due process rights guaranteed under the 14th Amendment to the U.S. Constitution*." (Compl. ¶ 52 (emphasis added).) Plaintiffs allege that they "are entitled to have any enforcement of the Amended … Judgment, including any contempt proceedings for purportedly violating that [Amended] Judgment, determined in the U.S. District Court … ." (*Id.*) Plaintiffs then allege (1) that the Amended Judgment, upon which the Civil Contempt Order is based, is vague, ambiguous, and overbroad (*id.* ¶¶ 53–61); (2) that the overbroad, vague, and ambiguous Amended Judgment cannot be the basis for the Civil Contempt Order (*id.* ¶¶ 62–65); (3) that Plaintiffs cannot be held in contempt for violating the Tribal Defendants' Cleanup Plan because it is not a court order (*id.* ¶¶ 66–67); and (4) that *Montana* regulatory jurisdiction is not warranted under the present

circumstances (*id.* ¶¶ 72–77).[8]  As set forth below, the Court finds that Plaintiffs have failed to establish a likelihood of success on the merits for this due process claim.

As discussed above in Section III.A.1, the Tribal Defendants cannot be held liable under § 1983 because the Tribal Defendants entered and destroyed Plaintiffs' property pursuant to the Tribal Court's Civil Contempt Order, based on the Tribal Court's Amended Judgment, not state or federal law.  *See Pistor*, 791 F.3d at 1114.

Additionally, many of Plaintiffs' allegations and arguments concern the validity and breadth of the Amended Judgment, on which the subsequent Civil Contempt Order and the Tribal Defendants' Cleanup Plan are based.  (*See* Compl. ¶¶ 53–65; Doc. 2 at 11–15.)  However, as Plaintiffs concede, Plaintiffs never appealed the Amended Judgment to the Tribal Appellate Court.  (*See e.g.*, Compl. ¶ 26.)  For this reason, Judge Hayes previously found that Plaintiffs had not exhausted their tribal remedies with respect to the scope of the injunctive relief contained in the Amended Judgment, which precluded the District Court's review of the injunctive relief contained in the Amended Judgment.  (*See* Case No. 3:09-cv-02330-WQH-JLB, Doc. 176 [MSJ Order] at 24.)  The Ninth Circuit affirmed.  *See Rincon Mushroom Corp. of Am.*, 2024 WL 3066049, at *2.

Here too, the Court is precluded from reviewing the scope of the injunctive relief contained in the Amended Judgment.  *See Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affs.*, 255 F.3d 801, 814 (9th Cir. 2001) (finding that the plaintiff had not demonstrated that his tribal remedies were inadequate or nonexistent because the plaintiff did not appeal the Tribal Court's dismissal of his action, the dismissal was without prejudice, and the Tribe contended that there are further tribal remedies available).  In addition, Plaintiffs seemingly concede that they have not exhausted their tribal remedies.  Plaintiffs allege in their Complaint that the Amended Judgment allows "[e]ither party … [to] file a motion related to modifying or enforcing the April 22, 20219 Judgment as

---

[8] Plaintiffs repeat these allegations as argument in their TRO/PI.  (*See* Doc. 2 at 11–18.)

modified by this Order." (Compl. ¶ 72 (quotation omitted); *see also* Case No. 3:09-cv-02330-WQH-JLB, Doc. 160-8 [Amended Judgment] at 203.) Plaintiffs have not filed any such motion. Thus, while Plaintiffs did not timely appeal the Amended Judgment, they are not without tribal remedies.

Plaintiffs suggest that their Writ Petition exhausted their tribal remedies with respect to the Amended Judgment. (*See* Doc. 2 at 6 ("Plaintiffs exhausted their Tribal Court remedies by seeking writ review with the Tribal Court of Appeals, which denied Plaintiffs['] Petition."); *id.* at 7 ("Plaintiffs have exhausted their Tribal Court remedies."); Compl. ¶¶ 8, 11.) However, Plaintiffs do not explain how or why their Writ Petition, filed in response to the Civil Contempt Order nearly five years after the Amended Judgment, is sufficient to exhaust their tribal remedies with respect to that Amended Judgment, upon which the Civil Contempt Order is based. Further, as the Tribal Appellate Court noted, Plaintiffs' Writ Petition cannot be used as a substitute for an authorized appeal under Rincon Appellate Court Rules and Procedures § 3.812(a), which provides that a notice of appeal with the applicable trial court may be filed within 45 days of the challenged order or judgment. (Doc. 2-1 at 42 (citing *U.S. Alkali Export Ass'n v. United States*, 325 U.S. 196 (1945).) A review of the record demonstrates that Plaintiffs' Writ Petition was not filed within 45 days of *either* the Amended Judgment *or* the Civil Contempt Order. Therefore, Plaintiffs have not exhausted their tribal remedies with respect to either document. *See Demontiney*, 255 F.3d at 814.[9]

Further, the Court is not persuaded by Plaintiffs' argument that they cannot be held in contempt for violating the Tribal Defendants' Cleanup Plan because it is not a court order. (*See* Compl. ¶¶ 66–67.) The Amended Judgment specifically permits the Tribe to

---

[9] Because the Court finds that Plaintiffs have failed to exhaust their tribal remedies with respect to the Amended Judgment and the Civil Contempt Order, the Court need not reach the Tribal Defendants' arguments regarding the doctrines of *res judicata* and the "law of the case." (*See* Doc. 11 at 19–22.)

"set a cleanup plan in place[.]" (Case No. 3:09-cv-02330-WQH-JLB, Doc. 160-8 [Amended Judgment] at 196.)

Lastly, the Court is also not persuaded by Plaintiffs argument that *Montana* regulatory jurisdiction is not warranted under the present circumstances. (*See* Compl. ¶¶ 72–77.) As set forth above, Judge Hayes already found that the Tribe has regulatory jurisdiction over Plaintiffs' property (*see* Case No. 3:09-cv-02330-WQH-JLB, Doc. 176 [MSJ Order] at 19), and the Ninth Circuit affirmed, *see Rincon Mushroom Corp. of Am.*, 2024 WL 3066049, at *1. The Court will not re-visit the issue here.

Therefore, Plaintiffs have failed to establish a likelihood of success on its Fourteenth Amendment due process claim, and Plaintiffs' TRO/PI must be denied with respect to this claim.

### 3. Lack of Jurisdiction to Impose Tribal Contempt Order—Third Claim for Relief

In their third claim for relief for "Lack of Jurisdiction to Impose Tribal Contempt Order," Plaintiffs allege:

> [T]he Tribal … Court has no jurisdiction to issue a civil contempt order against Plaintiffs and enforce it by permitting the Tribe to forcibly enter [Plaintiff] Donius' property and seize his … personal property and destroy all structures on the property without a warrant. The authority the Tribal Court claims it has to do so does not exist, as herein alleged. Since the Tribe cannot exercise criminal jurisdiction over [Plaintiff] Donius, it has no authority to issue any warrant to allow the seizure activities set forth in the Tribal Trial Court's Contempt Order. Accordingly, the Tribal … Court lacks jurisdiction to issue any Contempt Order requiring Plaintiffs to pay to the Tribal … Court $350,000, or any amount, and to order the removal of all property and items from [Plaintiff] Donius' property if that amount in contempt sanctions is not paid. As explained, that right belongs exclusively to the U.S. District Court. … Accordingly, Plaintiffs are entitled to prospective injunctive relief directing Defendants to refrain from attempting to exercise jurisdiction over Plaintiffs and Donius' property as a means to enforce the Tribal Trial Court's Contempt Order.

As set forth above (*see* Section III.A.1–2), Judge Hayes already found that the Tribe has regulatory jurisdiction over Plaintiffs' property, and Plaintiffs have not clearly explained how the Tribal Defendants are impermissibly exercising criminal jurisdiction over Plaintiffs as opposed to its regulatory jurisdiction. As such, Plaintiffs have failed to establish a likelihood of success on this claim, and Plaintiffs' TRO/PI must be denied with respect to this claim.

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs' TRO/PI is **DENIED**. Plaintiffs have not demonstrated that the "extraordinary remedy" of injunctive relief is warranted in this case. *See Winter*, 555 U.S. at 24.

**IT IS SO ORDERED**.

DATE:  May 19, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE